DEBRA SHORE ET AL. *v.* HAVERSON
ARCHITECTURE AND DESIGN, P.C.

HAVERSON ARCHITECTURE AND DESIGN, P.C. *v.*
MARC P. SHORE ET AL.
(AC 25945)

Bishop, McLachlan and Foti, Js.

470

Argued September 13—officially released December 6, 2005

*Neal L. Moskow,* with whom, on the brief was *Deborah M. Garskof,* for the appellant (defendant in the first case, plaintiff in the second case).

*James R. Fogarty,* with whom, on the brief was *Gerald G. Reidy,* for the appellees (plaintiffs in the first case, defendants in the second case).

*Opinion*

McLACHLAN, J. In these consolidated cases involving an arbitration award, Haverson Architecture & Design, P.C. (Haverson) appeals from the judgment of the trial court, denying its application to vacate the award rendered in favor of Marc P. Shore and Debra Shore and granting the Shores' application to confirm

the award.[1] On appeal, Haverson claims that the court improperly (1) confirmed the arbitrator's award, (2) refused to hear testimony from the arbitrator, (3) refused to grant Haverson's motion for reconsideration and (4) granted the Shores' application for a prejudgment remedy. We affirm the judgment of the trial court.

On June 26, 2001, the Shores hired Haverson to perform architectural services for their main house and carriage house. Pursuant to a written agreement, the parties agreed to submit claims or disputes to arbitration in accordance with the construction industry arbitration rules of the American Arbitration Association (association). On or about January 24, 2003, Haverson filed a demand for arbitration with the association, claiming that the Shores owed it money for various items. The Shores denied Haverson's claims and submitted counterclaims for construction problems and for substantial underestimation of the construction costs.

Arbitration hearings were conducted on four days in July, 2003, and then again on two days in February, 2004. Posthearing briefs were submitted on March 15 and 16, 2004. In a letter dated March 22, 2004, the association notified the parties that (1) the posthearing briefs had been transmitted to the arbitrator on March 16, 2004, (2) the arbitrator had declared that the hearings would be closed as of March 29, 2004, and (3) the arbitrator would render the award within thirty days from the closing of the hearings, April 28, 2004.

On April 28, 2004, the association sent the parties a copy of the arbitrator's written award by facsimile transmission. The award denied all of Haverson's claims

---

[1] Customarily, the parties are referred to as plaintiffs and defendants; however, each party initiated proceedings in the trial court, Haverson to vacate the arbitration award, and the Shores to confirm the award. The court consolidated the proceedings and, in its memorandum of decision, referred to Haverson as the defendant. Here, however, the parties will be referred to by name to avoid confusion.

and granted both of the Shores' counterclaims, awarding the Shores $89,200. On April 30, 2004, the association sent the parties, by facsimile transmission, a copy of the arbitrator's modification of award, signed on April 29, 2004. The modification added two sentences that had been cut off at the bottom of the first page of the original award and did not change the substance of the original award.

On May 12, 2004, Haverson wrote to the association, requesting correction or vacation of the award. The association denied the request on June 2, 2004. On June 16, 2004, the Shores filed an application in court to confirm the award. On July 20, 2004, Haverson filed an application in court to vacate the award on the grounds that (1) the award was not timely made, (2) the arbitrator failed to abide by the association's rules and procedure and (3) the award was arbitrary, capricious and without support in the record. The actions were consolidated, and on September 7, 2004, the court granted the Shores' application to confirm the award and denied Haverson's application to vacate. On October 25, 2004, the court denied Haverson's motion for reconsideration and granted the Shores' application for a prejudgment remedy. This appeal followed. We address each claim in turn.

I

We first address Haverson's claim that the court improperly confirmed the decision of the arbitrator. Specifically, Haverson claims that (1) the arbitrator failed to render an award within the time frame required by the association's rules, as provided in the submission, (2) the award rendered by the arbitrator on April 28, 2004, was incomplete and (3) the arbitrator failed to respond to a request to correct the award.

In determining whether the court improperly upheld the arbitration award, we first set forth our standard

of review. "Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 273 Conn. 86, 92–93, 868 A.2d 47 (2005). Here, the parties' arbitration agreement was unrestricted,[2] thus limiting the scope of review. Nonetheless, courts can vacate an award even in the case of an unrestricted submission when "(1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . [or] (3) the award contravenes one or more of the statutory proscriptions of [General Statutes] § 52-418. . . . [Section] 52-418 (a) (4) provides that an arbitration award shall be vacated if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." (Citation omitted; internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 94. Here,

---

[2] "In determining whether a submission is unrestricted, we look at the authority of the arbitrator. The authority of the arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of such qualifications, an agreement is unrestricted." (Internal quotation marks omitted.) *Exley* v. *Connecticut Yankee Greyhound Racing, Inc.*, 59 Conn. App. 224, 229, 755 A.2d 990, cert. denied, 254 Conn. 939, 761 A.2d 760 (2000).

Haverson claims that the arbitrator's award contravenes the proscriptions of § 52-418 (a) (4) because a mutual, final and definite award was not made. We disagree.

Our Supreme Court in *Industrial Risk Insurers* stated: "In our construction of § 52-418 (a) (4), we have, as a general matter, looked to a comparison of the award with the submission to determine whether the arbitrators have exceeded their powers. . . . [A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." (Citations omitted; internal quotation marks omitted.) Id., 94–95. In this case, the arbitrator was bound to abide by the construction industry arbitration rules of the association. The arbitrator did not exceed his powers under those rules or so imperfectly execute them that a mutual, final and definite award was not made.

A

Haverson claims that the arbitrator failed to render an award within the time frame required by the submission. Rule 42 of the construction industry arbitration rules provides that "[t]he award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 calendar days from the date of closing the hearing, or, if oral hearings have been waived, from the date of the [association's] transmittal of the final statements and proofs to the arbitrator." The arbitrator informed the parties on March 22, 2004, that the hearing would be closed on March 29, 2004, therefore requiring him to render an award by April 28, 2004. Haverson contends that the closing date should have been on March 16, 2004, when

the briefs were transmitted to the arbitrator, rather than on March 29, 2004. The arbitrator, however, did not exceed his powers under the association's rules when he chose March 29 as the official closing date. Rule 36 provides that "the arbitrator shall declare the hearing closed" when he is satisfied that the parties' presentation is complete. "[T]he hearing shall be declared closed as of the final date set by the arbitrator for the receipt of documents, responses [as provided in rule 33],[3] or briefs." Here, it was reasonable for the arbitrator to choose March 29, 2004, as the closing date.[4] It appears that on the final day of hearings, the arbitrator expressly permitted the parties to take additional time, if necessary, to submit further documentary evidence. The parties did not inform the arbitrator that they agreed not to file further documents.[5]

Haverson additionally claims that the arbitrator improperly extended the time allowed for the award

[3] Rule 33 (b) provides: "If the parties or the arbitrator directs that documents or other evidence be submitted to the arbitrator after the hearing, the documents or other evidence, unless otherwise agreed by the parties and the arbitrator, shall be filed with the [association] for transmission to the arbitrator. All parties shall be afforded an opportunity to examine and respond to such documents or other evidence."

[4] In *Carr* v. *Trotta*, 7 Conn. App. 272, 276, 508 A.2d 799, cert. denied, 200 Conn. 806, 512 A.2d 229 (1986), this court held that it was reasonable for an arbitrator to extend the completion date of a hearing until a transcript was received. We concluded that a transcript aids the trier in the same manner as does a brief. Similarly, it was reasonable for the arbitrator in this case to postpone the closing of the hearing in anticipation of additional documents. Although Haverson claims that the parties agreed on March 10, 2004, that they would not submit the additional documents, there is no evidence that this information was reported to the arbitrator.

[5] Although the exact agreement regarding the submission of additional documents is unclear, there is no question that there was discussion that additional time be given so that further documentary evidence might be submitted to the arbitrator. No transcript was made, however, of the evidentiary hearing or of this discussion at the end of that hearing. As evidence, a letter sent by Haverson's counsel to the Shores' counsel stating that neither party would submit additional evidence to the arbitrator was offered. There is no indication that the letter, or the understanding it related, was ever sent to the arbitrator.

under rule 39.[6] The arbitrator did not, however, extend the thirty day time frame for rendering the award; he merely set the closing date to allow for the submission of additional documents. The arbitrator acted within the rules governing such submission and did not exceed his powers.

The Shores claim that Haverson waived any objection for noncompliance with the association's rules. They argue that under rule 38,[7] if a party knows that one of the rules has not been complied with, he waives his ability to object on that ground unless he states his objection in writing before proceeding with the arbitration. The association's letter of March 22, 2004, stated that the hearing would be closed as of March 29, 2004, and that the deadline for the award was April 28, 2004. Haverson did not raise any objection to the March 29, 2004 closing date until after the arbitrator rendered the award. We agree that Haverson was too late to raise its objection after the award had been rendered.

Our Supreme Court in *Diamond Fertiliser & Chemical Corp.* v. *Commodities Trading International Corp.*, 211 Conn. 541, 560 A.2d 419 (1989), held that the plaintiff had waived any right to object to the timeliness of the award by failing to raise that issue when it received notice of the approximate date on which the award was to be rendered. The court criticized the conduct of the plaintiff: "We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be

---

[6] Rule 39 provides: "The parties may modify any period of time by mutual agreement. The [association] or the arbitrator may for good cause extend any period of time established by these rules, except the time for making the award. The [association] shall notify the parties of any extension."

[7] Rule 38 provides: "Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object." It is not clear that this rule applies to posthearing proceedings, as is the case here, an issue we do not decide.

against them, for a cause which was well known to them before or during the trial. *Krattenstein* v. *G. Fox & Co.*, 155 Conn. 609, 616, 236 A.2d 466 (1967) . . . . The plaintiff's attempt to manipulate the arbitration process by reserving objection until after the announcement of the arbitral award is precisely the kind of conduct we discountenanced in *Krattenstein* v. *G. Fox & Co.*, supra. We will not reward such conduct here." (Citations omitted; internal quotation marks omitted.) Id., 553–54. Here, Haverson had the opportunity to raise its objection to the closing date long before the award was rendered. Its failure amounts to a waiver of any objection it might have made.

## B

Haverson argues that the arbitration award was improperly confirmed because the award rendered on April 28, 2004, was incomplete and that the complete award was not rendered until April 30, 2004, two days past the thirty day deadline. We disagree.

The parties agree that the corrected award issued on April 30, 2004, merely restored two lines that the facsimile transmission to the parties had omitted from the first page of the award. Rule 47 permits the arbitrator to "correct any clerical, typographical, technical or computational errors in the award" within twenty days after the issuance.[8] The arbitrator acted within the provision of rule 47 when he issued the corrected version two days after the issuance of the original award.

---

[8] Rule 47 provides: "Within twenty calendar days after the transmittal of an award, the arbitrator on his or her own initiative, or any party, upon notice to the other parties, may request that the arbitrator correct any clerical, typographical, technical or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided.

"If the modification request is made by a party, the other parties shall be given ten calendar days to respond to the request. The arbitrator shall dispose of the request within twenty calendar days after transmittal by the [association] to the arbitrator of the request and any response thereto."

## C

Haverson next claims that the arbitrator improperly failed to respond to a request to correct the award. On May 12, 2004,[9] Haverson moved to have the award corrected to address the time for making the award and to amend an alleged inconsistency in the arbitrator's findings.[10] Haverson claims that rule 47 is the proper vehicle for such corrections and that the arbitrator's lack of response to its motion was evidence of his failure to comport with the association's rules. We disagree. Rule 47 does not permit the arbitrator to redetermine the merits of any claim already decided, but merely to correct any "clerical, typographical, technical or computational errors . . . ." Therefore, the arbitrator's refusal to grant Haverson's motion for correction was proper considering that Haverson was seeking to have the findings "amended" more than it was seeking a mere clerical correction.

## II

Haverson claims that the court improperly rendered its decision in the absence of the arbitrator's testimony. Although Haverson suggested that the arbitrator should testify before the court on this matter, Haverson did

---

[9] Haverson argues that its May 12, 2004 letter to the association operated to extend the time in which it was permitted to file its application to vacate. General Statutes § 52-420 (b) provides: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion." The award was made on April 28, 2004. Haverson filed its application to vacate on July 20, 2004. The May 12 letter to the association was not an application to vacate; therefore, the application to vacate the award on July 20, 2004, was untimely. See *Amalgamated Transit Union Local 1588* v. *Laidlaw Transit Inc.*, 33 Conn. App. 1, 4, 632 A.2d, 713 (1993) ("if motion to vacate, modify or correct is not made within thirty day time limit specified in . . . § 52-420, the award may not thereafter be attacked on any of grounds specified in [General Statutes] §§ 52-418 and 52-419").

[10] Haverson requested that the arbitrator amend the inconsistency of the finding that although the Shores were responsible for causing the damages, Haverson was responsible for payment of them.

not present the live testimony of the arbitrator at any of the hearings before the court, either before or after the confirmation, nor did Haverson seek to secure his testimony through deposition. Furthermore, Haverson did not set forth any legal analysis on that issue in its brief. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Ward* v. *Greene*, 267 Conn. 539, 546, 839 A.2d 1259 (2004). "Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 153 n.19, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). Accordingly, we cannot reach the merits of that claim because Haverson's brief is devoid of any legal analysis of the issue.

## III

Haverson also claims that the court improperly denied its motion for reconsideration. We disagree. The granting of a motion for reconsideration and reargument is within the sound discretion of the court. The standard of review regarding challenges to a court's ruling on a motion for reconsideration is abuse of discretion. "As with any discretionary action of the trial court . . . the ultimate [question for appellate review] is whether the trial court could have reasonably concluded as it did." *Biro* v. *Hill*, 231 Conn. 462, 465, 650 A.2d 541 (1994). After a hearing on October 25, 2004, and consideration of the parties' submissions, the motion for reconsideration was denied. The court's scope of review of the award is limited. We find no basis in the record on which to conclude that the court abused its discretion.

## IV

Finally, Haverson claims that the court improperly granted a prejudgment remedy to the Shores because its motion for reargument and reconsideration was still pending before the court when it granted the Shores' application.[11] Haverson also argues that because the Shores' application sought security for an award that was made improperly, the prejudgment remedy on that award was improper. We disagree.

With respect to the granting or denying of applications for prejudgment remedies, the court must determine, in light of its assessment of the legal issues and credibility of witnesses, whether a plaintiff has sustained his burden of showing probable cause. On appellate review, the determination of the court is reviewed for clear error. See *Dow & Condon, Inc.* v. *Anderson*, 203 Conn. 475, 479, 525 A.2d 935 (1987). Haverson claims that the court committed clear error when it refused to entertain any of the evidence that it sought to proffer in opposition to the application for a prejudgment remedy. In fact, the only evidence that Haverson wanted to offer in opposition at the October 25, 2004 hearing was the testimony of the arbitrator.[12] Haverson,

---

[11] Although Haverson argues the contrary, the application for a prejudgment remedy was granted after the court denied Haverson's motion for reargument and reconsideration. At the hearing on October 25, 2004, the court stated: "We have to do the motion to reargue before we know whether to do that prejudgment remedy." The court then heard argument on Haverson's motion for reargument and reconsideration. After the argument, the court stated: "The court has heard reargument. So, that part of the motion has been allowed. The court has considered the arguments of counsel on the reargument and will deny the relief requested in the motion for reargument and reconsideration. The decision of the court as written will stand. Now, we have one more thing to do. We have the motion for application for prejudgment remedy." The transcript makes clear that the motion for reargument was no longer pending when the court granted the application for prejudgment remedy.

[12] Haverson's counsel argued at the October 25, 2004 hearing that "he would like the opportunity" to call the arbitrator to testify.

however, never actually offered the testimony of the arbitrator. Furthermore, it would have been improper for Haverson to seek the arbitrator's testimony under these circumstances. We note that in a similar case, *Hoeft* v. *MVL Group, Inc.*, 343 F.3d 57 (2d Cir. 2003), the United States Court of Appeals for the Second Circuit held that the District Court abused its discretion in allowing an arbitrator's deposition into evidence to determine whether the arbitrator had manifestly disregarded the law. Id., 66–68. The Second Circuit reasoned that although courts may, in their discretion, permit "limited, judicially controlled discovery"; id., 68–69; regarding claims of bias or prejudice, courts may not permit discovery into an arbitrator's decision-making processes. See id., 68. As in *Hoeft*, it would have been improper for the court to require the arbitrator to submit to further questioning regarding the thought processes that went into his decision. Therefore, after confirming the arbitrator's award and denying the motion for reconsideration, there was ample evidence for the court to determine that the Shores had sustained their burden of showing probable cause that a judgment would be rendered in their favor.

The judgment is affirmed.

In this opinion the other judges concurred.