## NATIONAL WASTE ASSOCIATES, LLC *v.* TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA (SC 18380)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.

Argued December 1, 2009—officially released January 19, 2010

*Melissa A. Scozzafava,* with whom, on the brief, was *Eric M. Grant,* for the appellant (plaintiff).

*Paul G. Roche,* for the appellee (defendant).

*Opinion*

PER CURIAM. The plaintiff, National Waste Associates, LLC, brought this action for breach of contract and for a declaratory judgment after the defendant, Travelers Casualty and Surety Company of America, declined to provide a defense or to indemnify the plaintiff pursuant to an employment practices liability insurance policy (policy) that the defendant had issued to the plaintiff. The defendant denied the allegations of the plaintiff's complaint and raised three special defenses, which the plaintiff denied. The defendant thereafter filed a motion for summary judgment, and the trial court granted that motion. The plaintiff then filed this appeal.[1] We affirm the judgment of the trial court.

The trial court relied upon the following undisputed material facts when ruling on the defendant's summary judgment motion. The plaintiff purchased employment practices liability insurance from the defendant for the period of February 15, 2007, through February 15, 2009, which generally was to insure the plaintiff against damages and defense costs arising out of claims alleging wrongful employment practices. On May 12, 2007, a former employee brought an action against the plaintiff

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

claiming wrongful discharge. When the defendant declined to provide a defense or to indemnify the plaintiff in connection with that action, the plaintiff commenced the present action.

On November 16, 2007, the defendant filed a motion for summary judgment, arguing that it had no duty to defend or to indemnify under various provisions of the policy including, inter alia, exclusion five. Exclusion five provides: "This [l]iability [c]overage shall not apply to, and the [defendant] shall have no duty to defend or to pay, advance or reimburse [d]efense [e]xpenses for, any [c]laim . . . based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any fact, circumstance, situation, transaction, event or [w]rongful [a]ct[2] underlying or alleged in any prior or pending civil, criminal, *administrative* or regulatory proceeding, including audits initiated by the Office of Federal Contract Compliance Programs, against any [i]nsured as of or prior to the applicable [p]rior and [p]ending [p]roceeding [d]ate set forth in [the policy declarations] . . . ." (Emphasis added.) According to the defendant, the foregoing exclusion applied to bar coverage because the claim alleged in the former employee's action against the plaintiff was "based upon, ar[ose] out of, or relate[d] to, directly or indirectly, the same facts, circumstance, situation, transaction, event or wrongful acts as those that were the subject of administrative proceedings involving the [former employee] that took place prior to the policy's . . . prior and pending proceeding date," namely, proceedings brought by the former employee to obtain unemployment benefits.

[2] " 'Wrongful [a]ct' " is defined in the policy, in relevant part, as "a [w]rongful [e]mployment [p]ractice occurring in the course of or arising out of a [c]laimant's employment . . . ." A wrongful employment practice, in turn, is defined by the policy as including wrongful termination and invasion of privacy.

Documents evidencing those proceedings[3] and the complaint in the former employee's action against the plaintiff were appended to an affidavit accompanying the defendant's motion. The documents and complaint indicated that the plaintiff's former employee had claimed, both when pursuing unemployment benefits and in the action against the plaintiff, that she wrongfully had been discharged from employment with the plaintiff after resisting the plaintiff's attempt to invade her privacy.

The trial court agreed with the defendant that the unemployment benefit proceedings clearly constituted "administrative proceedings" within the meaning of the policy and, accordingly, granted the defendant's motion for summary judgment.[4] In so concluding, the court generally considered the purpose and function of "claims-made" insurance policies[5] such as the one at

[3] Those documents included a department of labor (department) notice of hearing with a fact-finding report and the former employee's statement attached, dated May 18, 2005; the former employee's appeal to the department's board of review, dated August 3, 2005, challenging an appeal referee's decision; the decision of the board of review, dated October 6, 2005; and the decision on the defendant's motion to open, dated December 6, 2005. The plaintiff, in its objection to the defendant's motion for summary judgment, did not deny that the proceedings evidenced by the documents had occurred, but instead attached affidavits of its officers indicating their belief that the proceedings were not the type contemplated by the policy.

[4] Because the trial court concluded that exclusion five precluded coverage, it did not reach the defendant's additional claims that exclusion six and the plaintiff's failure to satisfy a certain condition of the policy also provided independent bases for granting the defendant's motion for summary judgment. On appeal, the defendant presses these arguments as alternative grounds to affirm the trial court's judgment. See Practice Book § 84-11. Because we disagree with the plaintiff's claims on appeal, we need not consider the proposed alternative grounds for affirmance.

[5] As the trial court explained, "a [c]laims-made policy [is] an insurance policy . . . that covers liability for injury or damage that the insured is legally obligated to pay (including injury or damage occurring prior to the effective date of the policy, but subsequent to the retroactive date, if any), arising out of incidents, acts or omissions, as long as the claim is first made during the policy period or any extended reporting period. [Regs., Conn. State Agencies § 38a-327-1 (a).] [T]he purpose behind claims-made insurance [is] to limit [the insurer's] liability to a fixed period of time. . . . This

issue here, and it relied on jurisprudence involving similar policy terms and analogous agency proceedings, and Connecticut courts' repeated characterization of unemployment proceedings as "administrative." The plaintiff claims on appeal that the trial court improperly construed the policy or, alternatively, that the policy phrase "administrative or regulatory proceeding[s]" is ambiguous such that disposition of this case by summary judgment was not appropriate.

Our examination of the record on appeal and the briefs and arguments of the parties persuades us that the judgment of the trial court should be affirmed. Because the trial court's memorandum of decision fully addresses the arguments raised in the present appeal, we adopt the trial court's concise and well reasoned decision as a statement of the facts and the applicable law on the issues. It would serve no useful purpose for us to repeat the discussion therein contained. See, e.g., *Lord Family of Windsor, LLC* v. *Inland Wetlands & Watercourses Commission*, 288 Conn. 669, 673, 954 A.2d 133 (2008); *Royal Indemnity Co.* v. *Terra Firma, Inc.*, 287 Conn. 183, 189, 947 A.2d 913 (2008).

The judgment is affirmed.

increased certainty permits an insurer to charge lower premiums for this particular species of policy." (Citation omitted; internal quotation marks omitted.) *National Waste Associates, LLC* v. *Travelers Casualty & Surety Co. of America*, 51 Conn. Sup. 369, 374, 988 A.2d 402 (2008). Relatedly, "[t]he purpose of the prior litigation exclusion provision is so that insurance companies [issuing claims-made policies] can be apprised of events that might blossom into a covered event during the policy period." Id., 381.